**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alan Ripa, | No. CV-13-01612-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Federal National Mortgage Association, Wells Fargo & Company, Wells Fargo NA, Unknown Defendants 1-100, Unknown Third Party Defendants 1-100, | |
| Defendants. | |

Defendants Wells Fargo Bank, N.A. and Federal National Mortgage Association ("Fannie Mae") have filed a motion to dismiss pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 11. The motion is fully briefed and no party has requested oral argument. For the following reasons, the Court will grant the motion.[1]

**I.  Background.**

Plaintiff Alan Ripa obtained a $137,600 loan from Bank One in December 2002 (the "Loan"). Doc. 11 at 1. The Loan was secured by real property located at 6732 E. Latham Street, Scottsdale, Arizona. *Id.* Bank One later assigned the Deed of Trust to another party and that party assigned the Deed of Trust to Wells Fargo. *Id.* at 2. On October 2, 2009, Wells Fargo appointed Michael A. Bosco, Jr. as successor trustee. *Id.*

---

[1] Plaintiff's response to the motion fails to comply with the font and type size requirements of LRCiv 7.1(b). Plaintiff shall comply with all local rules in his future filings.

1   Plaintiff defaulted on his repayment obligations several times, and each time Mr. Bosco

2   recorded a Notice of Trustee's Sale.  *Id.*  Plaintiff's property was sold at a trustee's sale

3   on September 10, 2010, but that sale was nullified due to error.  *Id.*

4       Plaintiff alleges that he sought loan modification services but "encountered

5   persistent incompetent responses."   Doc. 1-1, ¶ 17.   He contends that Wells Fargo's

6   attempts to foreclose were "illegal," and that foreclosure was pursued on an "illegal dual

7   track" while he was seeking loan modification.  *Id.*, ¶¶ 17, 22, 24-25.  He also asserts that

8   the foreclosure on September 10, 2010, was wrongful and illegally deprived him of his

9   home for more than one year, during which time it was vandalized.  *Id.*, ¶¶ 18-22.

10  Additionally, Plaintiff alleges that Wells Fargo is party to a 2012 consent judgment

11  entered in *United States of America, et al. v. Bank of America* ("Consent Judgment"), that

12  contains promised "conduct remedies" upon which he relied.  *Id.*, ¶ 13.[2]

13      Plaintiff asserts fourteen claims against Wells Fargo, Fannie Mae and other

14  defendants, including: (1) violation of A.R.S. § 44-1522 by conduct, (2) violation of

15  A.R.S. § 44-1522 by omission, (3) breach of contract, (4) violation of A.R.S. Title 31,

16  Chapter 6.1, (5) negligent misrepresentation, (6) fraudulent concealment, (7) failure to

17  hire, train or supervise employees, (8) breach of Consent Judgment, (9) constructive

18  fraud, (10) equitable estoppel, (11) promissory estoppel, (12) violation of the duty of

19  good faith and fair dealing, (13) common law fraud, and (14) wrongful foreclosure.

20  **II.    Legal Standard.**

21      **A.    Rule 8(a).**

22      Rule 8(a)(2) requires that a pleading "contain a short and plain statement of the

23  claim showing that the pleader is entitled to relief[.]"  *See* Fed. R. Civ. P. 8(a)(2); *Porter*

24  *v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  "[A] complaint generally must satisfy only

25  the minimal notice pleading requirements of Rule 8(a)(2)."  *Id.*

26  _____

27      [2] Plaintiff also alleges that Wells Fargo is subject to a "Consent Order entered
    before the Board of Governors of the Federal Reserve System" in 2011.  Doc. 1-1, ¶ 8.
28  Plaintiff does not attach a copy of this order or allege any of its specific provisions.  As
    such, the Court does not consider it.

### B.     Rule 9(b).

Rule 9(b) requires that a plaintiff alleging fraud or mistake "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) has been interpreted by the Ninth Circuit to require the pleader to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furn. Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The plaintiff must also "set forth . . . an explanation as to why the disputed statement was untrue or misleading when made." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.").

### C.     Rule 12(b)(6).

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations "are taken as true and construed in the light most favorable to the nonmoving party." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). Legal conclusions couched as factual allegations "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore "'are insufficient to defeat a motion to dismiss for failure to state a claim,'" *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted). To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

1  **III.    Analysis.**

2        **A.    Fraud Claims (Counts One, Two, Five, Six, Nine, and Thirteen).**

3        Plaintiff has asserted several fraud-related claims including violations of Arizona's

4  Consumer Fraud Act (A.R.S. § 44-1522) by conduct and omission, negligent

5  misrepresentation, fraudulent concealment, constructive fraud, and common law fraud.

6  *See* Doc. 1-1, ¶¶ 31-36, 43-46, 47-49, 56-58, 68-70.  Although each of these claims has

7  unique elements, they share one common requirement – each must be pled with

8  particularity as required by Rule 9(b).  *See Silving v. Wells Fargo Bank, NA*, 800 F. Supp.

9  2d 1055, 1075 (D. Ariz. 2011) (noting that a plaintiff must plead a claim under Arizona's

10  Consumer Fraud Act with particularity); *Neilson v. Union Bank of Cal., N.A.*, 290 F.

11  Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well established in the Ninth Circuit that

12  both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity

13  requirements."); *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 663 (9th Cir. 1999)

14  (requiring that a state law claim for fraudulent concealment be pled with particularity

15  under Rule 9(b)); *Vess*, 317 F.3d at 1106 (9th Cir. 2003) ("It is established law, in this

16  circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law

17  causes of action.").

18        Plaintiff pleads four instances of false statements or misrepresentations: (1)

19  "Defendants" falsely promised to provide loan modification services in a fair and legal

20  manner (Doc. 1-1, ¶ 15); (2) "Defendants falsely told [him] they had lost all of his

21  documents" (*Id.*, ¶ 16); (3) on September 9, 2010, "Defendants" acknowledged that he

22  "had made all required payments, and executed all accurate documents," and told him

23  "the loan modification was still in process," while "conceal[ing] the fact that they had

24  illegally pursued foreclosure" (*Id.*, ¶ 17); and (4) between September 2010 and December

25  2010, Wells Fargo told him that the trustee's sale was rescinded and his home had not

26  been sold (*Id.*, ¶ 19-20).[3]

27

28        [3] Many of Plaintiff's allegations refer generally to "Defendants" and do not specify to which of the several defendants in the case he is referring.

1   Plaintiff has failed to plead these fraud claims with particularity.   With the
2   exception of the fourth statement, Plaintiff does not identify which of the multiple
3   defendants named in the Complaint made the alleged false statements.  *See Schreiber*,
4   806 F.2d at 1401.  For the fourth statement, Plaintiff states that Wells Fargo falsely told
5   him that the trustee's sale held on September 10, 2010, was rescinded and that his home
6   was not sold.  Doc. 1-1, ¶ 20.  Although this paragraph does identify a specific defendant,
7   Plaintiff still has failed to identify the person who made the alleged false statement, when
8   or where it was made, or why it was untrue or misleading.  *See Yourish*, 191 F.3d at 993.

9   Plaintiff's complaint contains other fatal errors with respect to Count Nine.  Under
10  Arizona law, a relationship "akin to a fiduciary relationship must exist" for a constructive
11  fraud cause of action to arise.  *McAlister v. Citibank*, 171 Ariz. 207, 214 (Ct. App. 1992).
12  Plaintiff appears to contend that such a relationship exists here, "arising from the initial
13  loan origination, the relationship between the parties, the parties joint venture at avoiding
14  foreclosure . . . , the Arizona statutes . . . [and] the 2012 Consent Judgment[.]"  Doc. 1-1,
15  ¶ 57.  Plaintiff is incorrect.  Neither Arizona law nor the Consent Judgment provides that
16  a fiduciary relationship exists between lenders and mortgagors.  *See Valley Nat'l Bank of*
17  *Phoenix v. Elect. Dist. No. 4*, 90 Ariz. 306, 316 (1961) ("[T]he relationship between a
18  Bank and an ordinary depositor, absent any special agreement, is that of debtor and
19  creditor."); *McAlister*, 171 Ariz. at 214; *Urias v. PCS Health Sys.*, 211 Ariz. 81 (Ct. App.
20  2005) (holding that a debtor/creditor relationship does not create a fiduciary duty).
21  Further, contractual relationships alone do not give rise to fiduciary duties.  *Cook v.*
22  *Orkin Exterminating Co.*, 227 Ariz. 331, 334 (Ct. App. 2011) ("[C]ommercial
23  transactions do not create a fiduciary relationship unless one party agrees to serve in a
24  fiduciary capacity.").  Plaintiff has not alleged that either Defendant ever agreed to serve
25  in a fiduciary capacity.

26  Further, Plaintiff's contention that a fiduciary relationship existed as a result of a
27  "joint venture at avoiding a foreclosure" is entirely without merit.  A joint venture exists
28  "when two or more parties agree to pursue a particular enterprise in the hope of sharing a

profit." *Ellingson v. Sloan*, 22 Ariz. App. 383, 386 (1974).  Plaintiff does not allege any facts to support the existence of an agreement to share profits in pursuit of avoiding foreclosure.

Because Plaintiff has failed to plead his fraud claims with particularity and has not pled facts demonstrating a fiduciary relationship with Defendants, the Court will dismiss Counts One, Two, Five, Six, Nine, and Thirteen.

## B.  Contract Claims (Counts Three and Twelve).

Plaintiff asserts two contract claims: (1) breach of contract, and (2) breach of the duty of good faith and fair dealing.  A breach of contract claim contains three elements under Arizona law: (1) the existence of a contract, (2) its breach, and (3) resulting damages.  *Graham v. Asbury*, 112 Ariz. 184, 185 (1975).  Arizona law implies a duty of good faith and fair dealing in every contract, which prohibits either party from acting to "impair the right of the other to receive benefits which flow from their agreement or contractual relationship."  *Rawlings v. Apodaca*, 151 Ariz. 149, 153 (1986).  Parties may "breach [the] duty of good faith without actually breaching an express covenant in the contract."  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 491 (2002).

Plaintiff's complaint states:

> The documents developed by the parties in the origination of the loan and mortgage which are the subject of this litigation were incorporated into a mortgage note, a deed of trust and other contracts, and include promises as to loss mitigation, loan modification, payment, collection, and foreclosure, which both parties understood to be subject to modification as required by economic circumstances.

Doc. 1-1, ¶ 38.

This paragraph refers to the loan origination contract between the parties.  That contract, embodied in the Note and Deed of Trust, is the only contract specifically identified in the complaint.  Plaintiff does not explain, however, how the actions of Defendants breached the Note and Deed of Trust.  Indeed, Plaintiff makes reference to

1   the Deed of Trust only once in his Complaint and has neither attached a copy nor
2   identified any relevant sections.  Plaintiff does not allege any particular breach of that
3   contract, nor does he allege any benefit under that contract that was impaired.  Plaintiff
4   does allege generally that "Defendants" made false statements and concealed information
5   from him, but nothing in the Deed of Trust guarantees Plaintiff the right to receive
6   truthful information about the loan modification process.

7         Plaintiff alleges "he was able to receive loan modification" (Doc. 1-1, ¶ 17), and
8   that Wells Fargo "proposed loan modification and offer of settlement" (*Id.*, ¶ 23), but he
9   does not allege any agreement was ever executed and fails to plead any factual
10  allegations setting out the terms of any such agreement.  Further, as the Court will discuss
11  below, Plaintiff is not a party to the Consent Judgment and therefore does not have the
12  right to receive any benefits from that agreement or pursue any action for breach of the
13  agreement.

14        Finally, Plaintiff contends that "a promise of future conduct by either or both
15  parties will support a contract, or a novation."  Doc. 13 at 12.  Plaintiff cites no authority
16  to support this assertion, nor does he identify the alleged contract that contains this
17  promise of future conduct.  Plaintiff has not pled facts sufficient to establish any of the
18  elements of a breach of contract claim.  Nor has he stated a claim that either Defendant
19  breached the duty of good faith and fair dealing with regard to any contract.  The Court
20  will therefore dismiss Counts Three and Twelve.

21        **C.**    **Violation of A.R.S. Title 33 Chapter 6.1 (Count Four).**

22        Chapter 6.1 of Title 33 of the Arizona Revised Statutes contains several sections
23  related to Deeds of Trust.  The chapter covers everything from appointing successor
24  trustees to the disposition of proceeds from a trustee's sale.  *See* A.R.S. § 33-801 et seq.
25  Plaintiff does not specify what section of Chapter 6.1 Defendants violated.  The Court
26  cannot determine whether Plaintiff has adequately pled the elements of a cause of action
27  where Plaintiff has not specified which cause of action he is attempting to bring.
28  Although Plaintiff contends in his response that "NO notices required in (sic) by A.R.S. §

1  33-807.01 were ever sent" (Doc. 13 at 13), this allegation does not appear in Plaintiff's

2  complaint and cannot salvage Plaintiff's claim.  Plaintiff has failed to state a claim under

3  Title 33, Chapter 6.1 of the Arizona Revised Statutes.  Accordingly, Count Five is

4  dismissed.

5        **D.      Failure to Hire, Train, or Supervise (Count Seven).**

6        Arizona law does not provide a claim for failure to hire.  *See Burris v. City of*

7  *Phoenix*, 179 Ariz. 35, 43 (Ct. App. 1993) (noting that "no state or federal court has

8  recognized the tort of wrongful failure to hire").  Plaintiff cites no case law that would

9  support such a claim on the facts of this case.

10       An employer's liability for "negligent hiring, retention, or supervision of an

11 employee" depends on whether a court "first finds that the employee committed a tort."

12 *Kuehn v. Stanley*, 208 Ariz. 124, 130 (Ct. App. 2004).  Plaintiff neither alleges that any

13 individual employee of Wells Fargo or Fannie Mae committed a tort, nor how Defendants

14 were negligent in hiring, training, or supervising such an employee.  Plaintiff has failed to

15 state a claim for negligent hiring, retention, or supervision of an employee and the Court

16 will therefore dismiss Count Seven in its entirety.

17       **E.      Violation of Consent Judgment (Count Eight).**

18       Plaintiff attaches to his Complaint and incorporates by reference a copy of the

19 Consent Judgment entered into by Wells Fargo, the United States, fifty states, and the

20 District of Columbia, as well as a separate document called Enforcement Terms.  Doc. 1-

21 2.  The Court will consider these documents on the Motion to Dismiss without converting

22 it to a motion for summary judgment because they are attached to the Complaint and

23 incorporated by reference.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

24       Although Plaintiff relies heavily on the Consent Judgment as a basis for his

25 claims, enforcement of the Consent Judgment is expressly limited to the parties.  Doc.

26 11-16 at E-14-E-15, ¶¶ J-1, J-2 (noting that "[a]n enforcement action under [the] Consent

27 Judgment may be brought by any Party . . . or the Monitoring Committee.").  Plaintiff is

28 not a party to the Consent Judgment and accordingly cannot enforce it against

1   Defendants.  Plaintiff contends in his brief that the section of the Consent Judgment titled

2   "Enforcement Action" allows him to bring an action to enforce the terms of the Consent

3   Judgment.  Doc. 13 at 6.  But that section provides Plaintiff with no right of enforcement.

4   It merely states that "[n]othing in this Section shall limit the availability of remedial

5   compensation to harmed borrowers as provided in Section E.5[.]"  *Id.*  Section E.5 does

6   not give Plaintiff the right to sue to enforce the Consent Judgment.  *See* Doc. 11-16 at E-

7   12, ¶ E-5.  As a result, the Court will dismiss Count Eight.[4]

8   ### F.    Equitable and Promissory Estoppel (Counts Ten and Eleven).

9           Equitable estoppel requires "an affirmative misrepresentation of a present fact or

10  state of facts and detrimental reliance by another thereon."  *Tiffany Inc. v. W. M. K.*

11  *Transit Mix, Inc.*, 16 Ariz. App. 415, 419 (1972).  It is generally "available only as a

12  defense, while promissory estoppel can be used as a cause of action for damages."  *Id.*

13  Arizona courts have treated claims for equitable estoppel as claims for promissory

14  estoppel where plaintiffs have adequately alleged the elements of promissory estoppel.

15  *Gorman v. Pima Cnty*, 230 Ariz. 506, 510 n.4 (Ct. App. 2012).  "The critical distinction

16  between the two is that equitable estoppel refers to reliance on a misrepresentation of

17  some present or past fact, whereas 'promissory estoppel rests upon a promise to do

18  something in the future.'"  *Id.* (internal citation omitted).  Aside from that difference,

19  "promissory estoppel includes all elements of equitable estoppel."  *Id.*

20          Estoppel contains three elements: "(1) the party to be estopped commits acts

21  inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury

22  to the latter resulting from the former's repudiation of its prior conduct."  *Id.* at 510-11.

23  Plaintiff alleges that he "relied and acted upon [] false facts and concealment to his

24  detriment and was damaged thereby[.]"  Doc. 1-1, ¶ 61.  The only factual allegations in

25  the Complaint that set out inconsistent acts are in Paragraphs 17 and 18, where Plaintiff

26  alleges he was told by "Defendants" on September 9, 2010 that his loan modification was

27  _____

28          [4] Plaintiff's response contains a lengthy discussion of federal preemption.  Doc. 13 at 3-5.  This discussion appears to have no relation to the issues in this case, and the Court does not consider it.

1   still in process and that all required payments were made, and his home was then sold at a

2   trustee's sale the following day.  *Id.*, ¶ 17-18.  But Plaintiff does not specify which of the

3   multiple defendants is responsible for this alleged inconsistent act.

4         Plaintiff alleges that Defendants made several promises concerning the Consent

5   Judgment.  *Id.*, ¶¶ 10, 13, 15.  Plaintiff also alleges that he received "various commercial

6   communications . . . by Defendants promising loss mitigation services consisting of loan

7   modification and foreclosure prevention, and falsely promising that said services would

8   be provided in a fair and legal manner[.]"  *Id.*, ¶ 15.  Any promises contained in the

9   Consent Judgment were not made to Plaintiff and cannot form the basis for a promissory

10  estoppel claim.  *See Higginbottom v. State*, 203 Ariz. 139, 144 (Ct. App. 2002)

11  ("[Plaintiff] can only recover under the theory of promissory estoppel if he had a

12  'justifiable right to rely' on the alleged promise.") (citing *Trollope v. Koerner*, 106 Ariz.

13  10, 18 (1970)).  As to the purported promises made in "various commercial

14  communications," Plaintiff does not identify which of the multiple defendants made the

15  alleged promises, and thus the Court cannot determine whether any later inconsistent acts

16  occurred.  Accordingly, the Court will dismiss Counts Ten and Eleven.

17       **G.**    **Wrongful Foreclosure (Count Fourteen).**

18        Plaintiff alleges that his home was sold "in violation of the 2011 Order, Arizona

19  statute and common law."  Doc. 1-1, ¶ 72.  As discussed above, Plaintiff has neither

20  included the "2011 Order" in his complaint nor alleged any of its terms.  Further, Arizona

21  law provides no cause of action for wrongful foreclosure.  *Cervantes v. Countrywide*

22  *Home Loans, Inc.*, 656 F.3d 1034, 1043 (9th Cir. 2011) ("Arizona state courts have not

23  yet recognized a wrongful foreclosure cause of action.").  The Court will therefore

24  dismiss Count Fourteen.

25

26

27

28

1    **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 11) is **granted**.

2    Dated this 21st day of October, 2013.

3

4

5    _____

6    David G. Campbell
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28